## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **RICHARD A. DAVIDSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 13-1136-KHV** |
| **CAROLYN W. COLVIN,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM AND ORDER

Richard A. Davidson appeals the final decision of the Commissioner of Social Security to deny disability insurance benefits under Title II of the Social Security Act ("SSA"), 42 U.S.C. §§ 401 et seq., and supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 et seq. For reasons set forth below, the Court reverses the decision of the Commissioner and remands the case for further proceedings.

**I.      Procedural Background**

On September 4, 2009, plaintiff filed an application with the Social Security Administration for disability insurance benefits and SSI. Plaintiff's application was denied initially and on reconsideration. On December 8, 2011, an administrative law judge ("ALJ") conducted a hearing. See Transcript Of Administrative Record (Doc. #9) filed June 27, 2013 ("Tr.") at 20-44. On December 19, 2011, the ALJ concluded that plaintiff was not under a disability as defined in the SSA and that he was not entitled to benefits. Tr. 12-19. On February 15, 2013, the Appeals Council denied plaintiff's request for review. Tr. 1-6. Plaintiff appeals the final decision of the Commissioner to this Court. See 42 U.S.C. § 405(g), (h).

**II.      Factual Background**

The following is a brief summary of evidence presented to the ALJ.

Plaintiff was born on November 24, 1959.  At the time of the hearing, he was 52 years old.

Tr. 25.  Plaintiff dropped out of high school and passed the General Educational Development test.

Id.  He last worked in August of 2009 as an electronics test operator.  Id.  He has also worked as a

forklift operator and truck maintenance worker   Tr. 26-27.

A.      Medical Evidence

In March of 2008, psychologist Avner Stern, Ph.D., performed a disability determination

examination of plaintiff.  Plaintiff reported that because of a club foot, he had difficulty walking,

suffered a lot of pain and drank heavily.  Tr. 255.  Plaintiff stated that on a daily basis he drank until

he passed out, and also used marijuana and pain medication when he could obtain it.  Plaintiff

reported that he often felt depressed and that six years earlier, he tried to commit suicide after his

daughter died.  Dr. Stern formed the following diagnostic impressions:

> Overall, [plaintiff] is able to perform activities of daily living, to understand forcible
> [sic] tasks, and to sustain concentration over an eight hour day.  He is likely to have
> difficulty working with others because of his irritability.  He has a history of
> substance abuse which has curtailed his ability to maintain employment.  He is
> currently not being treated and therefore the pattern of losing his job is likely to
> continue.  Because of his substance abuse, he is unable to manage funds without
> assistance.

Tr. 256.

On December 12, 2009, John S. Bleazard, D.O., examined plaintiff for a disability

evaluation.  Tr. 282-285.  Plaintiff reported that he has a club foot on his left side, has had multiple

corrective surgeries and takes hydrocodone as needed for pain. Tr. 282.  Plaintiff stated that during

the night, he awakes 24 times due to ankle pain and that in the morning, he suffers stiffness in his

ankle for two hours. <u>Id.</u> Plaintiff estimated that he can sit for 90 minutes, stand for five minutes and

walk for five minutes. <u>Id.</u> Plaintiff reported a history of depression for which he takes Prozac. <u>Id.</u>

Dr. Bleazard performed a physical examination and found as follows:

> [Plaintiff] has a history of clubbed foot, left side. Today, he walks with a wide-based
> gait. He is limping slightly to the left, but station is stable. There is atrophy of the
> left calf as compared to the right with 4/5 remaining strength in the distal left lower
> extremity. There was some difficulty with orthopedic maneuvers. There is limited
> range of motion in the left ankle appreciated. * * *

> [Plaintiff] reports a history of depression, and was hospitalized at Shawnee Mission
> Medical in early 2000. This was a reported suicide attempt, but he reports no
> current ideations. [Plaintiff] is on Prozac management without evidence of delusions,
> hallucinations, or paranoia. He is oriented x3 and relates well to me. He does handle
> his own funds.

Tr. 284-85.

On February 2, 2010, medical consultant Harold Keairnes, M.D., completed a physical

residual functional capacity ("RFC") assessment form for plaintiff. Tr. 287-93. Regarding

exertional limitations, Dr. Keairnes checked boxes which indicated that in an eight-hour workday,

plaintiff could stand and/or walk with normal breaks for less than two hours and sit for about six

hours. Tr. 288. With regard to plaintiff's ability to push or pull (including operation of hand/foot

controls), Dr. Keairnes marked the box stating "limited in lower extremities." <u>Id.</u> In response to

a question asking "how and why the evidence supports your conclusions," including requesting

"specific facts upon which your conclusions are based," Dr. Keairnes stated as follows:

> [Plaintiff] has severe pain with standing/walking on his club foot. As a result, lifting
> should be done only from the seated position. Standing/walking is limited to about
> one hour in an 8-hour workday on a consistent basis. Pushing/pulling with the left
> leg is limited to personal needs only.

<u>Id.</u>

Regarding postural limitations, Dr. Keairnes marked boxes which indicate that plaintiff may

occasionally balance and stoop but never kneel, crouch, crawl or climb ramps, stairs, ladders, ropes or scaffolds. Tr. 290. In response to a request for specific facts upon which his conclusions were based, Dr. Keairnes stated as follows: "These are limited by pain in his club foot. Balancing and stooping are limited to occasionally by the pain, but he should avoid climbing, kneeling, crouching and crawling." Id.

The form asks whether (1) the symptoms are attributable to a medically determinable impairment, (2) the severity or duration of symptoms are disproportionate to the medically determinable impairment and (3) the severity of symptoms are consistent with the total medical and nonmedical evidence. Tr. 291-92. Dr. Keairnes responded as follows:

> [Plaintiff] reported problems with standing, walking, kneeling and stair climbing. His last job was sedentary bench work. His previous jobs were temporary so that he had time off between jobs to rest his painful club foot.
>
> The evidence supports [plaintiff's] allegations of symptoms and functional limitations.

Tr. 292.

> Under "additional comments," Dr. Keairnes stated as follows:
>
> [Plaintiff] has a congenital club foot that has experience [sic] multiple corrective operations. He reports that he has pain with standing, walking, kneeling and stair climbing. Apparently the problem has been getting progressively worse although Dr. Appl's medical records from 2007 show visits for pain in his foot and ankle. There were other visits in 2008 and 2009 because of the pain. Dr. Appl has prescribed narcotic analgesics for the pain.
>
> Dr. Bleazard, consultive examiner, found [plaintiff] walking with a wide-based gait and limping to the left. There was atrophy of the left calf. X-rays showed considerable narrowing of IT articulations with mild marginal spurring and eburnation, flattening of the calcaneal inclination at the ankle and a plaque-like calcific focus in the distal tendocalcaneus.
>
> DISCUSSION: [Plaintiff] has severe problems with standing/walking. Other medical problems identified in the evidence, but not contributing to functional

limitations include hepatitis C and chronic excessive alcohol use (12 pack of beer daily). * * *

There is no prospect for any significant improvement prior to 8/26/2010 or any time in the future.

Tr. 293.

On April 21, 2010, examiner Monica R. Cohorst completed a "Request for Medical Advice" form which indicated that she was referring plaintiffs's case for review by specialist(s) in "Physical Recon."[1] Tr. 296-97.  Specifically, Cohorst marked a box labeled "specific problems or questions"[2] and wrote as follows:

> HAVE YOU REVIEWED THE ENTIRE CASE?  (Y/N): yes
> Critical RFC:  less that [sic] involves sitting less than 8 hours of the day.
> Initial Form and Date:  RFC 02/09/10
> SUMMARY OF EVIDENCE AND MEDICAL DECISION:
> Allegations:
> Club foot
> Clmt is a 50 year old who was evaluated by Dr. Keairnes at V45 where he is found to be capable of a sit down job only that does not require stair climbing.  Besides for clmt findings there are limited findings and therefore **I have prepared a new RFC that allows clmt to do a little more work but w/ the same evidence that supports these restrictions.  Please sign.**
> Although clmt does have a hx of surgery he currently is able to walk well and has no

---

[1]      The record does not disclose Cohorst's medical background, if any, or what "physical recon" stands for.

[2]      The Request for Medical Advice form contains a section titled "Please Review the Medical Evidence and Respond to the following:"

☐      Please provide an assessment of the individual's current residual functional capacities.     ☐ Physical    ☐ Mental
☐      SSI Childhood - Please prepare SSA-538
☐      Please provide an assessment of whether there has been medical improvement . . . .
☐      Specific problems or questions:

Tr. 296.  Cohorst marked the fourth box.

> current hx of need for further surgery.  he [sic] did have a little bit of difficulty ambulating but he did not have severe difficulty.

Id.  (emphasis added).

Five days later, on April 26, 2010, Gerald Siemsen, M.D., completed a case analysis for plaintiff which states as follows:  "RFC reviewed and signed."[3]  Tr. 297.

On the same date, Dr. Siemsen signed a physical residual functional capacity assessment form for plaintiff. Tr. 298-305.  Regarding exertional limitations, Dr. Siemsen checked boxes which indicate that in an eight-hour workday, plaintiff can stand and/or walk (with normal breaks) for at least two hours and sit for about six hours.  Tr. 299.  With regard to plaintiff's ability to push or pull (including operation of hand/foot controls),  Dr. Siemsen marked the box "unlimited, other than as shown for lift and/or carry."  Id.  The next question asks for an explanation regarding "how and why the evidence supports your conclusions," including citation to "specific facts upon which your conclusions are based."  Id.  Dr. Siemsen provided no response.  Id.

Regarding postural limitations, Dr. Siemsen marked boxes which indicated that plaintiff may occasionally climb ramp and stairs, balance, stoop, kneel, crouch and crawl, but never climb ladders, ropes or scaffolds.  Tr. 300.  Regarding specific facts upon which the conclusions are based, Dr. Siemsen wrote as follows: "hx of club foot w/ corrective surgeries."  Id.

The form asked whether (1) plaintiff's symptoms are attributable to a medically determinable impairment, (2) the severity or duration of symptoms are disproportionate to the medically determinable impairment and (3) the severity of symptoms are consistent with the total medical and nonmedical evidence.  Tr. 303.  Dr. Siemsen provided no response.  Id.

---

[3]      The form indicates that the specialty of Dr. Siemsen is "Physical Recon."  Tr. 297.

Under "additional comments," Dr. Siemsen stated as follows:

AOD is when clmt stopped working.  He does report some hx of pain in his ankle.
his [sic] blood test for his hepatitis C when collected in 08/09 showed Alb to be 4.5
mg/dL and bili to be .9 mg/dL which is w/in normal limits.  Clmt currently reports
that he is drinking a 12pk of beer a day and he also smokes and does marijuana.  He
was working as and [sic] electronics tester in which he reports he was fired for
missing work b/c of his sick wife.  In 2007 he complained of his left foot hurting on
the bottom and on the ankles.  He reported on questionnaires that any exertional
activity causes severe pain.

A CMC exam was done on 12/12/09 where clmt is noted that he reports he has
stiffness [in the] morning for 2 hours and that he will awaken 24 x in the night due
to pain.  On exam clmt is noted to have a wide-based and limping slightly to the left
gait.  His weight was 233# and height was 73 inches.  There are noted to be multiple
scars on the left ankle.  The abdomen showed no signs of ascities and there was no
evidence of end organ damage.  clmt extremities [sic] showed that peripheral pulses
are intact and there is no peripheral edema.  Clmt is noted that though he does have
some reduction of ROM it is functional left had [sic] in degrees: Dorsi-flexion 10,
Plantar-flexion 20, Inversion 20 and eversion 10.  ALR was negative bilateral and
there were no muscle spasms noted.  He is able to bend 6 inches to the floor and has
excellent grip strength.  Motor and sensory functions were noted to remain intact and
reflexes were symmetrical.  romberg [sic] was negative.  On orthopedic movements
clmt was noted to have no difficulty w/ getting on and off the examining table and
no difficulty w/ heel and toe walking.  There was only mild difficulty w/ hopping and
squatting and arising from the sitting position.  There is noted to be some difficulty
w/ orthopedic maneuvers and that there was some atrophy of the left calf as
compared to the right w/ 4/5 remaining strength in the distal left lower extremity.

x-ray of the ankle showed no fx observed but there was considerable narrowing of
IT articulations only mild marginal spurring and eburnation.  There is flattening of
the calcaneal ankle, no articular erosions could be seen.  Plaque-like calcific focus,
measuring 2.5 cm in length and is seen in the distribution of the distal
tendocalcaneus.

After review of the medical and non-medical clmt is found to be credible that he does
have some pain, however the severity is not credible.  Clmt is found to be capable
of work at the level of this RFC.

Tr. 305.

On March 29, 2011, plaintiff saw orthopedic surgeon Greg A. Horton, M.D., for evaluation

and treatment recommendations. Tr. 365-66. Dr. Horton reported that plaintiff has "a long-standing

foot deformity that [has] become progressively problematic and painful for him." Tr. 365. Upon physical examination, Dr. Horton found as follows:

> He has a medical incision, lateral incision, and he has an Achilles lengthening. He has substantial planovalgus foot on standing examination. Peroneals look like they subluxates. He's fixed over in quite a bit of valgus and abduction. He has this serpiginous scar laterally. He kind of has a skew foot in that his naviculum is relatively medial. His hind foot is in valgus. He has quite a bit of discomfort over the insertion of his Achilles where he has this calcification of the tendon. He does have palpable pulses. His peroneus tertius seems to be a fairly substantial deforming force.

Id. Dr. Horton found that "X-rays confirm the clinical findings. He has a foot that is markedly arthritic." Id. Dr. Horton formed the impression that plaintiff "has a fixed planovalgus foot deformity." He made the following recommendations:

> I discussed the nature of the problem and treatment alternatives with the patient in detail. He has a foot that is crooked and arthritic. I certainly understand he has a reason why this is uncomfortable for him. From a nonsurgical standpoint, about the best one could do would be some sort of bracing. * * * This is something that would be potentially amenable to a surgical procedure as well, but he would need to participate in smoking cessation during the perioperative period. I think that given his previous surgeries and his deformity, I would consider doing a medial displacement calcaneal osteotomy and then do a closing wedge osteotomy through his transverse tarsal joint and stabilize this area with a modified triple. He has all this pain over the calcification of his Achilles and could use a bit of Achilles lengthening. I think one would have to do this openly and excise this bit of tendon. The surgery, convalescence and rehab, along with the risks, hazards and benefits were discussed with the patient in detail. As he has not been braced previously, I think that a trial of bracing before proceeding with a surgery would be my recommendation. He will speak with the orthotist today, and I will see him back in three months.

Tr. 365-66.

On June 28, 2011, plaintiff saw Dr. Horton for a repeat evaluation. Tr. 367. Plaintiff reported that he had been wearing a brace, which seemed to help. Dr. Horton reported that "the brace does seem to give him at least some better balance control." Dr. Horton noted as follows:

Of course, his foot is stiff over in valgus.  His heel is certainly lateralized, and he has a prominence medially.  His X rays don't show any acute changes.  He has arthrosis both of the talonavicular, as well as the naviculocuneiform region, in addition to the calcaneocuboid joint.  I think that his use of a cane and brace, particularly when he's on uneven ground makes some sense.  There is really not anything really different to do from a nonsurgical standpoint.

There is not really any therapy or anything that's going to make a difference.  I suppose if he was miserable, then going into a cast would be reasonable, but I don't think it's necessary at this point.  This is something that would be amenable to a surgical procedure.  I have previously discussed this with him.  He would still have dorsi and plantar flexion, but the inversion and eversion wouldn't be any better.  He could drive after six weeks.  I think his biggest hurdle would be that he would have to stop smoking before surgery due to the increased risks it poses.  I have also told him that even with a technically well-executed surgical procedure, use of a small brace would be potentially beneficial for him at least on a situational basis. * * * He will consider his options.  I have gone ahead and provided him with some Hydrocodone today.  I have told him that if he's unable to stop smoking or doesn't want to have anything done, then that's fine.  As the nature of my practice is primarily surgical, I'm not going to provide long-term narcotic management for this problem, and he probably needs to get plugged in with his primary care doctor or someone of that nature.

Id.

B.     Plaintiff's Testimony

At the hearing, plaintiff testified as follows:

Plaintiff cannot work due to severe pain in his foot.  Tr. 28.  It feels like somebody is driving a nail into it.  Id.  He can stand on his feet only eight to ten minutes and walk only 50 to 100 feet.  Tr. 28-29.  After walking 50 to 100 feet, he must sit down for 30 to 45 minutes and elevate his foot.  It is very painful for him to walk up or down stairs.  Tr. 29-30.  He carries laundry to the basement by sliding the basket down and using the basket as a walker on his way up.  Tr. 30.  During an eight-hour period of the day, e.g. from 9:00 a.m. to 5:00 p.m., he needs to lie down and elevate his foot for six hours.  Id.  He can lift 25 to 30 pounds but cannot carry it.  Tr. 31.  He has no limitations with sitting or bending from the waist.  Id.

Plaintiff mows his yard with a push mower, but it takes him a while to get it done.  Tr. 33. He can mow for eight to ten minutes but then must take a break and sit down for 45 minutes.  Id. A neighbor helps with vacuuming, dishes and cooking.  Plaintiff does the grocery shopping.  Tr. 34. He can push the cart and is able to park the car close to his back door and bring in little loads at a time.  Tr. 35.  Afterwards, he is worn out and must elevate his leg with hot packs.  Id.  Plaintiff wears an ankle brace to try to keep bones from rubbing together and cracking his ankle.  Id.  Plaintiff takes hydrocodone for pain.  Tr. 36.  With medication, he suffers pain at a "seven" on a scale of one to ten, with ten being the most extreme.  Id.  Plaintiff uses alcohol to help with the pain.  Id.  He drinks two quarts of beer a day.  Id.

Because of throbbing pain in his foot and ankle, plaintiff is unable to sleep at night.  Tr. 37. He goes to bed at 9:00 p.m. or 10:00 p.m.  Id.  It takes him about 45 to 60 minutes to fall asleep.  Id. He awakens around 1:30 a.m. or 2:00 a.m. and cannot get back to sleep.  Id.  As a result, he is tired all day and unable to concentrate.  Tr. 38.

C.    Vocational Expert Testimony

At the hearing, vocational expert Denise Waddell testified as follows:

Based on the following RFC, an individual with plaintiff's age, education and work experience could work as an electronic testing operator, as performed by plaintiff, and in other light unskilled jobs such as electrical assembler, bench assembler and connector assembler:

> [T]he individual can lift and carry, push, pull 20 pounds occasionally, 10 pounds frequently.  **Stand and walk a total of two hours out of an eight hour day**, sit six hours out of an eight hour day.  All postural are on an occasional basis with the exception of no climbing ladders, ropes, or scaffolds and only two to three flights of stair climbing a day.  No foot controls.  Limited to work which involves only occasional interaction with the general public or with coworkers.

Tr. 39-41 (emphasis added).

If the individual could stand only eight to ten minutes at a time, the limitation would begin

to interfere with productivity and attention to task and would not be tolerated in the workplace.

Tr. 42.  If the individual could stand or walk less than two hours in an eight-hour day, he could not

perform plaintiff's past work or other work in the national economy.  Tr. 43.

D.    ALJ Decision

The ALJ made the following findings:

1.  The claimant meets the insured status requirements of the Social Security Act
through March 30, 2013.

2.  The claimant has not engaged in substantial gainful activity since his alleged
onset date, August 26, 2009 (20 CFR 404.1571 *et seq.* and 416.971 *et seq.).*

3.  The claimant has the following severe impairments: congenital food deformity,
obesity, depression, and a history of substance abuse, including alcohol and cannabis
(20 CFR 404.1520(c and 416.920(c)). * * *

4.  The claimant does not have an impairment or combination of impairments that
meets or medically equals the severity of one of the listed impairments in 20 CFR
Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526,
416.920(d) and 416.926). * * *

5.   After careful consideration of the entire record, the undersigned finds the
claimant's residual functional capacity is consistent with performing a range of work
at the light exertional  level.  The claimant can lift, carry, push, and pull 20 pounds
occasionally and 10 pound [sic] frequently.  **The claimant can stand and walk a
total of 2 hours in an eight-hour day** as well as sit for a total of 6 hours in an
eight-hour day.  The claimant cannot climb ladders, ropes, or scaffolds.  He also
cannot operate foot controls and he can only climb two or three flights of stairs per
day.  The claimant, however, can perform all other postural activities occasionally.
Additionally, the claimant has some mental limitations and can only occasional [sic]
interact with the public and co-workers. * * *

6.  The claimant is capable of performing past relevant work as an electronics test
operator.  This work does not require the performance of work-related activities
precluded by the claimant's residual functional capacity (20 CFR 404.1565 and
416.965).

7.  The claimant  is not disabled and has not been under a disability, as defined in the

Social Security Act, since his alleged onset date, August 26, 2009 (20 CFR 404.1520(f) and 416.920(f).

Tr. 14-19 (emphasis added).

## III.    Standard Of Review

The Court reviews the Commissioner's decision to determine whether it is "free from legal error and supported by substantial evidence." Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009); see 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Wall, 561 F.3d at 1052; Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). It requires "more than a scintilla, but less than a preponderance." Wall, 561 F.3d at 1052; Lax, 489 F.3d at 1084. Whether the Commissioner's decision is supported by substantial evidence is based on the record taken as a whole. Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994). Evidence is not substantial if it is "overwhelmed by other evidence in the record or constitutes mere conclusion." Grogan v. Barnhart, 399 F.3d 1257, 1261-62 (10th Cir. 2005). To determine if the decision is supported by substantial evidence, the Court will not reweigh the evidence or retry the case, but will meticulously examine the record as a whole, including anything that may undercut or detract from the Commissioner's findings. Flaherty v. Astrue, 515 F.3d 1067, 1070 (10th Cir. 2007).

## IV.    Analysis

Plaintiff bears the burden of proving disability under the Social Security Act. Wall, 561 F.3d at 1062. Plaintiff is under a disability if he has a physical or mental impairment which prevents him from engaging in any substantial gainful activity, and which is expected to result in death or to last for a continuous period of at least 12 months. Thompson v. Sullivan, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423(d)(1)(A)).

-12-

The Commissioner uses a five-step sequential process to evaluate disability. 20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). In the first three steps, the Commissioner determines (1) whether plaintiff has engaged in substantial gainful activity since the alleged onset, (2) whether he has a severe impairment or combination of impairments and (3) whether the severity of any impairment is equivalent to one of the listed impairments that are so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(c), (d); see Williams, 844 F.2d at 750-51. If plaintiff satisfies steps one, two and three, the Commissioner will automatically find him to be disabled. If plaintiff satisfies steps one and two but not three, the analysis proceeds to step four.

At step four, the ALJ must make specific facts regarding plaintiff's abilities in three phases. See Winfrey v. Chater, 92 F.3d 1017, 1023-25 (10th Cir. 1996). First, the ALJ determines plaintiff's physical and mental RFC. Id. at 1023 (citing SSR 86-8, Soc. Sec. Rep. Serv., Rulings 1983-1991, 423, 2427 (West 1992)). Second, the ALJ determines the physical and mental demands of plaintiff's past relevant work. Id. (citing 20 C.F.R. § 404.1520(e)). Third, the ALJ determines whether despite the mental and/or physical limitations found in phase one, plaintiff has the ability to meet the job demands found in phase two. Id. (citing SSR 84-62, Soc. Sec. Rep. Serv., Rulings 1975-1982, 809; Henrie v. U.S. Dep't of Health & Human Servs., 13 F.3d 359, 361 (10th Cir. 1993)). If plaintiff satisfies step four, i.e. if plaintiff shows that he is not capable of performing past relevant work, the burden shifts to the Commissioner to establish that plaintiff is capable of performing other work in the national economy. Williams, 844 F.2d at 750.

Here, the ALJ denied benefits at step four, finding that plaintiff is capable of performing past relevant work as an electronics test operator and other work in the national economy. Tr. 18-19.

-13-

Plaintiff argues that the ALJ erred in (1) not properly explaining the weight given to the opinions of each medical consultant and (2) relying on the RFC assessment form signed by Dr. Siemsen.

    A.    <u>Whether ALJ Erred In Not Explaining The Weight Given To Opinions Of Each Medical Consultant</u>

Plaintiff asserts that in determining RFC, the ALJ did not properly explain the weight given to the opinions of each medical consultant.[4]  Pursuant to SSR 96-8p, the ALJ must assess RFC based on all relevant evidence in the case record, including information about individual symptoms and any "medical source statements," <u>i.e.</u> opinions by medical sources regarding what plaintiff can still do despite his impairments.  SSR 96–8p, 1996 WL 874184, at *7 (July 2, 1996).  In so doing, the ALJ must discuss the following:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).  In assessing RFC, [the ALJ] must discuss [plaintiff's] ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity [plaintiff] can perform based on the evidence available in the case record.  **[The ALJ] must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.**
>
> * * *
>
> The RFC assessment must always consider and address medical source opinions.  **If**

---

[4]    An RFC assessment reflects an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.  Social Security Ruling ("SSR") 96-8p, West's Soc. Sec. Reporting Serv., Rulings 143 (Supp. 2011).  In assessing RFC, the ALJ considers plaintiff's abilities to meet the demands of work despite his impairments.  20 C.F.R. §§ 404.1545, 416.945.  The ALJ must consider physical abilities such as sitting, standing, walking, lifting, carrying, pushing, pulling, reaching, handling, stooping and crouching; mental abilities such as understanding, remembering and carrying out instructions; responding appropriately to supervision, co-workers and work pressures; other abilities such as hearing and seeing; and the ability to tolerate various work environments.  20 C.F.R. §§ 404.1545(b-d), 416.945(b-d); <u>see also</u> §§ 404.1521, 416.921 (listing examples of basic work activities which impairments may affect).

> **the RFC assessment conflicts with an opinion from a medical source, [the ALJ] must explain why the opinion was not adopted.**

Id. (footnote omitted) (emphasis added).

Plaintiff asserts that the ALJ did not address conflicting opinions by Dr. Keairnes and Dr. Siemsen regarding the length of time which plaintiff can stand or walk in an eight-hour workday. See Plaintiff's Social Security Brief (Doc. #14) filed September 23, 2013 at 19-21. As noted, Dr. Keairnes and Dr. Siemsen completed separate RFC assessment forms for plaintiff.[5] Dr. Keairnes found that in an eight-hour work day plaintiff can stand or walk less than two hours. Dr. Keairnes further explained that because of "severe pain," plaintiff is limited to "about one hour" of standing and walking. Tr. 288. Dr. Siemsen found that in an eight-hour workday, plaintiff can stand or walk at least two hours.[6] Tr. 299. Based on vocational expert testimony, the difference in doctor opinions is material to the ultimate determination whether plaintiff is disabled. If Dr. Siemsen is correct, i.e. plaintiff can stand or walk for two hours, he can work as an electronic testing operator and in other light unskilled jobs such as electrical assembler, bench assembler and connector assembler. Tr. 39-41. If Dr. Keairnes is correct, i.e. plaintiff can stand or walk less than two hours, he cannot perform past work or any other work in the national economy. Tr. 43.

---

[5] Regarding length of time which plaintiff can stand/walk in an eight-hour workday, the RFC assessment form provides the following responses:

- ☐ less than 2 hours in an 8-hour workday
- ☐ at least 2 hours in an 8-hour workday
- ☐ about 6 hours in an 8-hour workday
- ☐ medically required hand-held assistance device is necessary for ambulation

Tr. 288, 299. Dr. Keairnes marked the first box. Tr. 288. Dr. Siemsen marked the second box. Tr. 299.

[6] Dr. Siemsen did not further explain his response. Tr. 299.

In determining plaintiff's RFC, the ALJ did not acknowledge or discuss any difference in the opinions of Dr. Keairnes and Dr. Siemsen.  Tr. 16-17.  Instead, the ALJ found that both doctors opined that plaintiff can perform work at the light exertional level.[7]  Id.  The ALJ stated that he gave the opinions of both doctors "significant weight" and concluded that plaintiff can stand and walk a total of two hours in an eight-hour day.[8]  Tr. 15-17.

Although the ALJ purported to give the opinion of Dr. Keairnes "significant weight," he clearly did not do so.  As discussed, Dr. Keairnes opined that due to "severe pain," plaintiff is limited to "about one hour" of standing or walking in an eight-hour day.  Tr. 288.  Had the ALJ credited the opinion of Dr. Keairnes, he would have concluded that based on vocational expert testimony, plaintiff could not perform past relevant work or other work in the national economy.  The ALJ did not explain how he resolved these material inconsistencies or why he did not adopt the opinion of Dr. Keairnes.[9]

The Commissioner asserts that in determining RFC, the ALJ implicitly rejected the opinion

[7]      More specifically, the ALJ stated as follows:

Overall . . . doctors have indicated that [plaintiff's] conditions are manageable and that he can perform work at the light exertional level. . . . [Plaintiff] now indicates that the condition is overwhelming, but assessments, as noted above, do not support this assertion. . . . Assessments . . . show the affect of [plaintiff's] physical deficits to be relatively mild. . . . With regard to [plaintiff's] functioning, the undersigned give significant weight to doctors, like Dr. Bleazard, Dr. Keairnes and Dr. Siemsen . . . and finds [plaintiff] to be less limited than alleged.

Tr. 16-17.

[8]      The ALJ also gave "significant weight" to the opinion of Dr. Bleazard.  Tr. 17.  Dr. Bleazard's report does not address the length of time which plaintiff can stand or walk in an eight-hour day.  Tr. 281-85.

[9]      As discussed, the ALJ did not even acknowledge that conflict between his findings and the opinion of Dr. Keairnes.

-16-

of Dr. Keairnes, i.e. that plaintiff can stand or walk less than two hours in an eight-hour day.  See Brief Of Commissioner (Doc. #22) filed January 21, 2014 at 6-7.  Regardless, the ALJ erred in not explaining his reasons for rejecting the opinion.  Under SSR 96 - 8, if the ALJ assessment conflicts with a medical source opinion, he must explain the reasons why he did not adopt the opinion.  To the extent that the ALJ may have disagreed with certain aspects of the opinion of Dr. Keairnes, he was required to resolve the inconsistency with specific and legitimate reasons supported by substantial evidence for rejecting the opinion.  See Barbosa v. Colvin, No. 1:13-cv-410 FSA, 2014 WL 4929420, at *4 (E.D. Cal. Sept. 30, 2014).

The Commissioner asserts that any error is harmless because the evidence is strong enough to support the ALJ decision.  See Brief Of Commissioner (Doc. #22) at 7-8.  The Court disagrees. The ALJ may not reject significantly probative evidence without explanation.  See Main v. Colvin, No. 1:14-CV-3053-LRS, 2015 WL 1058000, at *5 (E.D. Wash. March 11, 2015).  If credited, the opinion of Dr. Keairnes would change the ultimate disability determination.  On these facts, the error is not harmless.  See id.; cf Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004) (harmless error determination may be appropriate in exceptional circumstances where court can confidently say no reasonable ALJ could have resolved factual matter in other way).  Accordingly, the Court will remand the case for further proceedings.[10]  See Parker v. Astrue, Case No. 11-2541-JWL, 2012 WL

---

[10]     Plaintiff asserts that the ALJ erred in not explaining the weight given to the opinion of Dr. Keairnes.  See Plaintiff's Social Security Brief (Doc. #14) at 21-22.  As a practical matter, this argument overlaps substantially with his first argument, i.e. that the ALJ erred in not explaining the weight given to each medical opinion.  In determining disability status, the ALJ must consider all medical opinions, including findings of fact made by program physicians or medical specialists regarding the nature and severity of an individual's impairments and resulting limitations. 20 C.F.R. §§ 404.1527(b), 416.927(e).  Although the ALJ is not bound by such findings, he must explain the weight given to opinions of program physicians and medical specialists (unless he gives controlling
(continued...)

1154493, at *8 (D. Kan. April 5, 2012); <u>Barbosa</u>, 2014 WL 4929420, at *4.

      B.     <u>Whether ALJ Erred In Relying On RFC Assessment By Dr. Siemsen</u>

      Plaintiff asserts that the ALJ erred in relying on the RFC assessment by Dr. Siemsen.  <u>See</u>

<u>Plaintiff's Social Security Brief</u> (Doc. #14) at 22-23.  Specifically, plaintiff asserts that the ALJ

should not have relied on the report because it is "questionable" whether Dr. Siemsen reviewed the

medical records or wrote the report.  <u>Id.</u> at 22.  In particular, plaintiff points to file notes which

indicate that an agency employee (Cohorst) prepared the RFC assessment for Dr. Siemsen's

signature.  <u>Id.</u> at 22-23.  Plaintiff states as follows:

> It appears from the April 21, 2010 notes of Monica Cohorst, that, Dr. Siemsen did
> not complete the document, but merely "signed off" on something that was prepared
> by an agency employee who is neither a doctor, nor a medical consultant.  Monica
> Cohorst completed the April 21, 2010 Request for Medical Advice noting "I have
> prepared a new RFC that allows clmnt to do a little more work ... Please sign."
> (Tr. 296).  A Case Analysis signed by Dr. Siemsen, MD on April 26, 2010 stated
> "RFC reviewed and signed".  (Tr. 297).  There is no indication that Dr. Siemsen did
> a review of the records or had any input regarding the limitations he attested to on
> the April 26, 2010 Physical Residual Functional Capacity Assessment.  (Tr. 298-
> 305).

<u>Plaintiff's Social Security Brief</u> (Doc. #14) at 22-23.

      In support of his argument, plaintiff asserts that an ALJ cannot rely on agency documents

which contain unauthenticated or unsigned medical reports.  <u>Id.</u> at 22 (citing 20 C.F.R. §

20404.1519n(e)).  Here, the RFC assessment contains Dr. Siemsen's signature.  Tr. 305.  Plaintiff

does not assert that the RFC assessment is unauthenticated or unsigned.  The fact that an agency

employee may have prepared the document does not show that Dr. Siemsen did not review it.  To

---

[10](...continued)
weight to a treating source opinion, which is not the case here).  <u>See</u> 20 C.F.R. § 416.927(e)(2).  As
noted, the ALJ erroneously interpreted the opinion of Dr. Keairnes.  On remand, the ALJ must
specifically consider the opinion of Dr. Keairnes and explain the weight which he gives it.

the contrary, the fact that Dr. Siemsen signed the document indicates that he adopted the statements contained therein.  On this record, plaintiff has not shown that the ALJ erred in relying on the report of Dr. Siemsen.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is **REVERSED**, and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) **REMANDING** the case for further proceedings consistent with this decision.

Dated this 21st day of May, 2015 at Kansas City, Kansas.

s/ Kathryn H. Vratil<br>
KATHRYN H. VRATIL<br>
United States District Judge